# ATTACHMENT 1

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Colorado

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)* )<br>A single family residence located at<br>2331 Pontiac Street, Denver, Colorado<br>(further described in Attachment A) | Case No. 11-sw-05305-BNB |

## APPLICATION FOR A SEARCH WARRANT

I, BATF S/A  Jason T. Cole a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
A single family residence located at 2331 Pontiac Street, Denver, Colorado (further described in Attachment A which is incorporated here by this reference)

located in the _____ District of Colorado _____ , there is now concealed *(identify the person or describe the property to be seized):*  cocaine, fruits of crime, implements of crime, and things criminally possessed -- as described in Attachment B, which is incorporated here by this reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. Section 841 and 846<br>and Title 18 U.S.C. Section 924(c) | Possession of cocaine with intent to distribute, distribution of cocaine, and<br>conspiracy to distribute cocaine; Knowingly to use and carry a firearm during and<br>in relation to a drug trafficking felony |

The application is based on these facts:

☒ Continued on the attached sheet.

☒ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under Fed. R. Crim. P. 41(f)(3) and 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

JASON T. COLE   SPECIAL AGENT
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/7/11

_____
*Judge's signature*

**KRISTEN L. MIX**
**U.S. MAGISTRATE JUDGE**
*Printed name and title*
**DISTRICT OF COLORADO**

City and state: Denver, Colorado

[ Print Form ]

HLMC_ATF_SW_000931

## ATTACHMENT A

The premises of Corey Lamont RILEY

Address: 2331 Pontiac St., Denver, Colorado.

Including all outbuildings and appurtenances thereto

2331 Pontiac St. is a single story red brick residence located on the west side of Pontiac Street, in Denver, Colorado. The residence is located on the west side of Pontiac Street between 23rd Avenue and 24th Avenue. The residence is the fourth house south from 24th Avenue and the fourth house north from 23rd Avenue. The residence is bordered by 2321 Pontiac Street on the south and 2341 Pontiac Street on the north. The residence is a single story red brick structure. The front door of the residence faces east and has a black wrought iron security door. To the left of the front door of the residence are gold numbers on top of a brown background which read "2331". The residence has a paved concrete driveway on the north side of the property which runs east and west from Pontiac Street and ends at a privacy fence on the property. There is a large tree on the southeast portion of the property and located in the front yard of the property. The residence has dark brown or black siding above the brick on the north east side of the structure. The building has a brown shingle roof. The residence has a 6 foot privacy fence around the back of the residence and a detached garage. The detached garage is a light brown structure with brown shingles on the roof. The garage bears a white garage door that faces west and connects to an alleyway that runs north and south between Pontiac Street and Olive Street.

HLMC_ATF_SW_000932

ATTACHMENT B
PROPERTY TO BE SEIZED

1. Cocaine.

2. Firearms.

2. United States currency.

3. Address books, telephone books, telephone records, ledgers, work papers, photographs, photographic film, video tapes, cassette tapes, notes and other written correspondences which relate to narcotics trafficking or affiliation with other co-conspirators.

4. Indications of occupancy: Records that establish the person who has control possession, custody or dominion over the property or some part of the property, vehicles or storage facilities. Personal mail, bills, keys, rent receipts, leases, mortgage documents, vehicle registrations, warranty documents and vehicle repair receipts.

5. Ammunition and items related to firearm possession.

6. Drug paraphernalia, to include digital scales, "cutting" agents, baggies, packaging, or other items known to be associated with cocaine use and distribution.

HLMC_ATF_SW_000933

## **AFFIDAVIT**

**AFFIDAVIT OF JASON T. COLE**
**SPECIAL AGENT, BUREAU OF**
**ALCOHOL, TOBACCO AND FIREARMS (ATF),**
**IN SUPPORT OF AN APPLICATION FOR A**
**RULE 41(b), (e), AND (f)(3) AND TITLE 18 USC §§ 2705 AND 3103a**
**DELAYED NOTICE**
**SEARCH AND SEIZURE WARRANT**

11-sw-05305-BNB

Your affiant, Jason Cole, is applying for a warrant to search the residence of Corey Lamont

RILEY, located at 2331 Pontiac St., Denver, Colorado based upon the below listed facts:

1.  Your affiant, a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and

    Explosives (ATF), United States Department of Justice, Denver, Colorado, being duly

    sworn, states as follows: I am an "investigative or law enforcement officer of the United

    States," within the meaning of Title 18, United States Code, Section 2510(7), that is an

    officer of the United States empowered by law to conduct investigations of and to make

    arrests for offenses enumerated by statute in the United States Code and the Colorado

    Statutory Code. That I am authorized under the Federal Rules of Criminal Procedure,

    Rule 41(a)(1)(C) as a "'Federal law enforcement officer'… who is engaged in enforcing

    the criminal laws and is within any category of officers authorized by the Attorney

    General to request a search warrant." I have been employed as a Special Agent with

    ATF since 2008. My primary duties consist of the enforcement of federal firearms laws,

    armed narcotics trafficking, and conspiracy laws. I have conducted and/or participated in

    many such investigations as an ATF Agent. Prior to becoming an ATF SA, I was

    employed as an Agent with the United States Border Patrol for approximately 2 years and

was stationed in Tucson, Arizona. During my career as a United Stated Border Patrol

Agent I assisted in the apprehension and investigation of individuals involved in narcotics

and human trafficking. I graduated from Pepperdine University in 2001 with a Bachelor

of Arts in Communication. I have written and/or participated in the execution of

approximately 25 federal and state search warrants involving organized crime, illegal

firearms possession, the use and trafficking of narcotics and armed narcotics trafficking.

Additionally, I have continually consulted with SA Jeffrey Russell, who has over 21

years of combined law enforcement experience, including with ATF, the Los Angeles

Police Department, Los Angeles, California and the Aurora Police Department, Aurora,

Colorado. SA Russell has investigated gang related and gang motivated crimes, as well

as crimes involving the illegal use of firearms and armed narcotics trafficking.

2.  As an ATF Special Agent, I am familiar with federal criminal laws pertaining to firearms and
    narcotics violations. I know that it is a violation of Title 21, U.S.C. Section 841(a)(1), for any
    person to manufacture, distribute, or dispense, or possess with the intent to manufacture,
    distribute, or dispense an illegal controlled substance. I know that cocaine is defined as a
    Schedule II controlled substance under the Controlled Substance Act. I know that it is a violation
    of Title 18 U.S.C. Section 924(c), for any person, during and in relation to any crime of violence
    or drug trafficking crime, to use or carry a firearm, or, in furtherance of any such crime, to
    possess a firearm.

3.  I have participated in this investigation since December 2009. Officers and Agents from
    ATF Denver, ATF Kansas City, Kansas, Detectives from the Denver, Colorado Police
    Department, Aurora, Colorado Police Department, Lakewood, Colorado Police

Department, as well as other departments and agencies to a lesser degree have assisted
me in this investigation. The information set forth herein is based upon my participation
in the investigation, encompassing my personal knowledge, observations and experience,
as well as information obtained from my review of investigative reports, intelligence
reports, interviews and debriefings with the participating officers and agents and
confidential informants (CIs) who have participated in this investigation.

4. In December, 2009 ATF SA Jeffrey Russell and myself interviewed and debriefed a CI
   (hereafter referred to as CI-1) who provided information relating to armed narcotics
   trafficking and acts of violence being conducted by members and associates of the Hell's
   Lovers Motorcycle Club (HLMC). SAs learned that HLMC is a national Outlaw
   Motorcycle Gang (OMG) with chapters in approximately 19 states and membership of
   approximately 400-500 nationwide. CI-1 stated that HLMC is broken into "regions"
   known as "clans" and that each region is governed by a "Clan Boss". CI-1 identified the
   Western Clan Boss as Corey RILEY. CI-1 further stated that RILEY dealt large amounts
   of cocaine (kilogram quantities) around the Denver, Colorado Metro area and possibly
   across the United States. CI-1 had been associated with HLMC for approximately five
   (5) years. CI-1 provided information with which to identify RILEY and later positively
   identified a photograph of RILEY and pointed out RILEY's residence to SAs.

5. Additionally, CI-1 stated that RILEY possessed numerous firearms to include a firearm
   which, according to CI-1, RILEY had stated was a "machine gun" (fully automatic). I
   have conducted a check of the National Firearms Act (NFA) database in order to

determine whether or not RILEY has any NFA weapons registered to him, and learned that RILEY does not have any machine guns nor any other NFA weapons registered to him.

6. SAs have run numerous checks on RILEY and the residence located at 2331 Pontiac Street, Denver, Colorado. Through surveillance and information provided to SAs by CIs throughout this investigation it was discovered that Corey Lamont RILEY lives at 2331 Pontiac Street, Denver, Colorado with his long time girlfriend Felicia Martinez. Martinez and RILEY often have a volatile relationship and Martinez will move out of the residence for extended periods of time. Furthermore, RILEY has a teenage daughter who spends some time at RILEY's residence. There are no other occupants of the residence, nor does anyone reside in any out building or structure on the premises. 2331 Pontiac Street, Denver, Colorado is a single family residence. SAs have checked with databases, and have contacted utility companies which all list Corey Lamont RILEY as the occupant of 2331 Pontiac Street, Denver, Colorado.

7. In approximately February, 2010, SA Cole and SA Russell developed another CI (hereafter referred to as CI-2). CI-2 had been associated with HLMC for approximately eight (8) years. CI-2 stated that RILEY had taught CI-2 about the distribution of cocaine, including how to recognize quality cocaine, how to measure cocaine for re-distribution, how to "cut" cocaine in order to increase profit from re-distribution, and other information. When asked by SAs about RILEY's distribution of cocaine, CI-2 stated that RILEY sells "hella mad shit" (which CI-2 went on to describe meant that RILEY dealt large amounts of narcotics, specifically cocaine). CI-2 went on to explain that RILEY

had indicated that CI-2 could purchase cocaine at any time from RILEY. CI-2 agreed to

begin working with ATF by, among other things, purchasing cocaine from RILEY.

8. On April 7, 2010 CI-2 conducted a controlled purchase of one (1) ounce of cocaine from
   RILEY. CI-2 had previously contacted RILEY in order arrange the transaction. RILEY

   instructed CI-2 to travel to RILEY's residence located at 2331 Pontiac St., Denver,

   Colorado in order to purchase the cocaine. RILEY stated that one (1) ounce of cocaine

   would cost CI-2 $900. According to CI-2, RILEY charged so much money for the

   cocaine because RILEY bragged to have the highest quality cocaine available. CI-2 met

   with RILEY at 2331 Pontiac St., Denver, Colorado and paid for the cocaine. RILEY

   retrieved the cocaine from his pants pocket and provided the cocaine to CI-2. This

   transaction was electronically recorded and I have reviewed the recording. The cocaine

   was sent to the Drug Enforcement Administration (DEA) Western Laboratory for

   forensic analysis. The substance tested positive for cocaine weighing 26.3 grams with a

   purity level of 66.4%.

9. On May 6, 2010 CI-2 conducted a controlled purchase of one (1) ounce of cocaine from
   RILEY. CI-2 had previously arranged the transaction and had agreed to meet with

   RILEY at RILEY's residence located at 2331 Pontiac St., Denver, Colorado. The CI

   purchased one (1) ounce of cocaine from RILEY for $900 at RILEY's residence. This

   transaction was electronically recorded and I have reviewed the recording. The cocaine

   was sent to the DEA Western Laboratory for forensic analysis. The substance tested

   positive for cocaine weighing 26.3 grams with a purity level of 67.0%.

HLMC_ATF_SW_000938

10. On May 26, 2010, CI-2 conducted a controlled purchase of one (1) ounce of cocaine from RILEY. CI-2 had previously arranged the transaction and had agreed to meet with RILEY at RILEY's residence located at 2331 Pontiac St., Denver, Colorado. The CI purchased one (1) ounce of cocaine from RILEY for $900 at RILEY's residence. This transaction was electronically recorded and I have reviewed the recording. The cocaine was sent to DEA Western Laboratory for forensic analysis. The substance tested positive for cocaine weighing 24.8 grams with a purity level of 62.4%.

11. On July 14, 2010, CI-2 conducted a controlled purchase of two (2) ounces of cocaine from RILEY. CI-2 had previously arranged the transaction and had agreed to meet with RILEY at RILEY's residence located at 2331 Pontiac St., Denver, Colorado. The CI purchased two (2) ounces of cocaine for $1,800 ($900 per ounce). The transaction took place in the detached garage at the rear of RILEY's residence located at 2331 Pontiac St., Denver, Colorado. CI-2 stated that RILEY took two (2) plastic baggies containing the cocaine out of a black "camera" bag which was located in the garage. This transaction was electronically recorded and I have reviewed the recording. The cocaine was sent to the DEA Western Laboratory for forensic analysis. The substance tested positive for cocaine weighing 55.4 grams with a purity of 75.0%.

12. In January 2011 I developed a CI (hereafter referred to as CI-3). During a debrief, CI-3 admitted to having previously purchased cocaine from Corey RILEY. CI-3 stated that RILEY sold large amounts of cocaine and had agreed to sell cocaine to CI-3. CI-3 has

been associated with RILEY and HLMC for approximately 10 years. CI-3 stated that RILEY had taught CI-3 how to distribute cocaine. CI-3 stated that RILEY typically dealt cocaine out of his home, which CI-3 stated was located at approximately 23rd Street and Pontiac St. in Denver, Colorado. CI-3 later pointed out RILEY's residence as being located at 2331 Pontiac St., Denver, Colorado.

13. CI-3 stated that RILEY owned several firearms to include one (1) firearm which CI-3 stated was a "machine gun" (fully automatic). The CI described the firearm as a "submachine gun" which had a "silencer" or "suppressor" on it. CI-3 stated that RILEY has owned the firearm for approximately 10 years and that CI-3 has seen the firearm on multiple occasions. CI-3 stated that RILEY had once mentioned to CI-3 that RILEY kept his firearms in a closet in his basement. CI-3 went on to state that RILEY had mentioned a "hide" or secret compartment in the closet where he stored his narcotics and firearms.

14. On March 29, 2011, CI-3 met with Corey RILEY at RILEY's residence located 2331 Pontiac St., Denver, Colorado. CI-3 attempted to purchase one half (1/2) ounce of cocaine from RILEY for $400. CI-3 had previously spoken with RILEY about meeting with RILEY and purchasing approximately one half (1/2) ounce. RILEY instructed the CI to meet him at his residence for the transaction. When CI-3 met with RILEY on March 29, 2011, RILEY informed CI-3 that he did not have any cocaine, but that he would be getting some from his (RILEY's) source later that day or the following morning. CI-3 "fronted" RILEY $400, and agreed to await word that RILEY had

received more cocaine from RILEY's source. This attempted transaction was electronically recorded and I have reviewed the recording.

15. SAs did not observe RILEY leave the location. CI-3 stated to me that he believed that RILEY was testing whether or not CI-3 was a "snitch". Through CI-3 and other informants and sources it had been discovered that HLMC was worried that one of its members or associates was a "snitch" and was working with the police. CI-3 stated that RILEY likely had the cocaine "on hand" but was testing whether or not CI-3 would let RILEY hold on to the money. CI-3 stated that RILEY would not steal the money and that CI-3 was confident that RILEY would contact CI-3 "in a day or two" in order to complete the transaction.

16. "Fronting" is a term used to describe paying for narcotics or other items without immediately being provided the item being paid for. In my experience, "Fronting" is not a normal practice among the majority of Law Enforcement Agencies. It is my belief that RILEY knows that most Law Enforcement Agencies will not "front" money for narcotics or other items and was attempting to gauge CI-3's reaction to "fronting" the money. Additionally, RILEY may have been waiting to see if he was followed or arrested as a result of the attempted narcotics transaction.

17. On March 31, 2011, RILEY contacted CI-3 in order to complete the transaction. RILEY instructed CI-3 to meet him at his residence, located at 2331 Pontiac St., Denver, CO in order to complete the transaction. ATF SAs monitored RILEY's residence prior to CI-3 arriving at the location. SAs did not observe anyone arrive at or leave the residence prior

to the arrival of CI-3. CI-3 stated that RILEY had the cocaine ready in a plastic baggie and provided the baggie to the CI. RILEY informed the CI that his source had raised his prices and that one (1) ounce of cocaine would now cost $1,000, and that, therefore, one half (1/2) ounce of cocaine would now cost $500. The CI agreed to pay the outstanding amount the next time that the CI bought cocaine from RILEY. This transaction was electronically recorded and I have reviewed the recording. The cocaine was sent to the DEA Western Laboratory for forensic analysis. The substance tested positive for cocaine weighing 13.5 grams with a purity of 58.2%.

18. It should be noted that this is the only transaction in which RILEY did not have the cocaine in his possession at the time of the attempted purchase. Various informants have stated that RILEY deals in large quantities and that "ounces aren't worth his time", but that RILEY will sell smaller amounts of cocaine to HLMC members due to their association with the club.

19. On April 8, 2011, CI-3 conducted a controlled purchase of cocaine from RILEY at RILEY's residence, located at 2331 Pontiac St., Denver, Colorado. CI-3 had previously contacted RILEY about the purchase and agreed to meet RILEY at his residence. CI-3 purchased one half (1/2) ounce of cocaine for $500 at RILEY's residence. Additionally, CI-3 provided RILEY with the $100 which was outstanding for the previous purchase of cocaine. This transaction was electronically recorded and I have reviewed the recording. The cocaine was sent to the DEA Western Laboratory for forensic analysis. The substance tested positive for cocaine weighing 13.5 grams with a purity of 64.8%.

20. On April 13, 2011, CI-3 conducted a controlled purchase of cocaine from RILEY at
RILEY's residence, located at 2331 Pontiac St., Denver, Colorado. CI-3 had not
previously contacted RILEY about the purchase until approximately 30 minutes prior to
the meeting. CI-3 purchased one half (1/2) ounce of cocaine for $500 at RILEY's
residence. During this purchase RILEY took CI-3 down into the basement of his
residence. RILEY removed a large "brick" of cocaine from a closet. RILEY then
proceeded to remove one half (1/2) ounce of cocaine from the block and weighed the
amount for CI-3 to see. Furthermore, RILEY instructed CI-3 in the use of "Inositol
Powder" to "cut" (add a substance to a narcotic in order to increase the volume while
decreasing the overall purity of the narcotic, generally used to increase profits for
narcotics distribution). Additionally, RILEY instructed CI-3 in how to weigh cocaine in
order maximize profits for narcotics distribution. This transaction was electronically
recorded and I have reviewed the recording. The cocaine was sent to the DEA Western
Laboratory for forensic analysis. The substance tested positive for cocaine weighing 13.6
grams with a purity of 63.9%.

21. On May 12, 2011, CI-3 conducted a controlled purchase of cocaine from RILEY at
RILEY's residence, located at 2331 Pontiac St., Denver, Colorado. CI-3 had not
previously contacted RILEY about the purchase until the CI met with SAs. RILEY
instructed the CI to "come over" to RILEY's residence. The CI purchased one half (1/2)
ounce of cocaine from RILEY for $500 at RILEY's residence. RILEY again took CI-3
down into the basement of the residence in order to complete the transaction. RILEY

removed a "brick" of cocaine, which the CI guessed to weigh approximately nine (9) ounces from the closet. RILEY then "chopped" an amount off of the "brick" and weighed out the amount for CI-3. CI-3 and RILEY again spoke about "Inositol Powder" and how to weigh cocaine in order to maximize profit from narcotics distribution. This transaction was electronically recorded and I have reviewed the recording. The cocaine was sent to the DEA Western Laboratory for forensic analysis. The substance tested positive for cocaine weighing 13.7 grams with a purity of 78.1%.

22. On May 20, 2011, CI-3 conducted a controlled purchase of cocaine from RILEY at RILEY's residence, located at 2331 Pontiac St., Denver, Colorado. CI-3 had not previously contacted RILEY about the purchase until CI-3 met with SAs. RILEY instructed CI-3 to come to RILEY's residence for the transaction. The CI purchased one (1) ounce of cocaine from RILEY for $1,000 at RILEY's residence. RILEY took the CI into the basement and removed a "brick" from the closet. RILEY took one (1) ounce off of the "brick" and weighed the amount for CI-3 to see. This transaction was electronically recorded and I have reviewed the recording. The cocaine was sent to the DEA Western Laboratory for forensic analysis. The substance tested positive for cocaine weighing 27.4 grams with a purity of 75.8%.

23. I then instructed CI-3 to inquire about purchasing four and one half (4 ½) ounces of cocaine from RILEY. I instructed CI-3 to contact RILEY about purchasing the larger amount in order to ensure that RILEY could sell the larger amount and would be willing to sell the amount to CI-3 who had never purchased such a large amount of cocaine from

HLMC_ATF_SW_000944

RILEY. RILEY agreed to meet with the CI later in the week at RILEY's residence in order to conduct the transaction.

24. On June 3, 2011, CI-3 conducted a controlled purchase of four and one half (4 ½) ounces of cocaine from RILEY at RILEY's residence located at 2331 Pontiac St., Denver, Colorado. RILEY took the CI down into the basement of the residence and took a "brick" of cocaine out of the closet. CI-3 stated that the "brick" was approximately one half (1/2) kilogram in size. RILEY then began breaking up the "brick" for CI-3. RILEY, believing the cocaine was for an anonymous third party, cut the cocaine using "Inositol Powder". It should be noted that this is the first time that RILEY had used a cutting agent on cocaine being sold to CI-3. Additionally, RILEY provided CI-3 with one quarter (1/4) ounce of cocaine (which had not been cut) so that CI-3 could make money off of the transaction. RILEY charged CI-3 $4,000 for a total of approximately 129 gross grams of cocaine. The transaction took place at RILEY's residence. This transaction was electronically recorded and I have reviewed the recording. I conducted a field test of the substance using a NARCTEC, Inc., Cocaine Detection Kit which tested presumptive positive for cocaine. The substance is pending forensic analysis by the DEA Western Laboratory.

25. On June 30, 2011, CI-3 conducted a controlled purchase of two (2) ounces of cocaine from RILEY at RILEY's residence, located at 2331 Pontiac St., Denver, Colorado. CI-3 had not previously contacted RILEY about the purchase until the CI met with SAs. CI-3 arrived at the residence and RILEY escorted the CI into the basement. CI-3 asked

RILEY for two (2) ounces of cocaine. CI-3 provided paid $2,000 for the purchases of cocaine. The transaction took place at RILEY's residence. RILEY removed a "brick" of cocaine from the closet and removed and measured out two (2) ounces for CI-3. CI-3 indicated that the cocaine was for an anonymous third party. RILEY again "cut" the cocaine using "Inositol Powder". RILEY provided an additional "8 ball" (one eighth (1/8) of an ounce) for CI-3. This transaction was electronically recorded and I have reviewed the recording. The cocaine weighed approximately 63 gross grams. I conducted a field test of the substance using a NARCTEC, Inc., Cocaine Detection Kit, which tested presumptive positive for cocaine. The substance is pending forensic analysis by the DEA Western Laboratory.

26. To date, ATF has purchased approximately 14 ounces of cocaine from Corey RILEY over the course of 11 controlled purchases. Each of these purchases has occurred at RILEY's residence, located at 2331 Pontiac St., Denver, Colorado. During the course of this investigation no other parties have been present at RILEY's residence, nor have any other parties participated in any of the above described transactions.

27. Due to the fact that this investigation is ongoing and is currently utilizing multiple investigative techniques, to include multiple CIs, I believe that should RILEY be alerted to the presence of CIs operating in HLMC that the CIs, and/or the CIs' family could be placed in danger of intimidation, retaliation or be the subject of a violent act. I am, therefore, respectfully requesting that the Court grant a delayed notification.

HLMC_ATF_SW_000946

## CONCLUSION AND REQUEST FOR 3103a DELAYED NOTIFICATION

Based on the information provided herein, your affiant believes and respectfully submits that there is probable cause to believe that evidence of illegal cocaine trafficking along with the illegal possession and use of firearms is currently located inside the residence, located at 2331 Pontiac Street, Denver, Colorado, requested to be searched.

It is your affiant's belief that drug traffickers in the Denver metropolitan area take additional precautions when informed that they are the subjects of a federal investigation. Based on my knowledge and experience, the target of a federal investigation is likely to destroy or conceal records and other evidence of a crime if he/she learns of the execution of a federal search warrant at his personal residence or the residence of an associate. Your affiant believes that disclosure of the fact that there is a federal search warrant may seriously jeopardize the current and ongoing investigation, encourage flight to avoid prosecution, raise a risk of harm to anyone perceived to be a possible informant or government agent, and may result in the destruction of evidence or tampering with evidence and/or witnesses. See Title 18 USC Section 2705(a)(1) and (2). It is your affiant's belief that the utilization of a delayed notification search warrant is necessary to preserve the integrity of the investigation and to not alert the subject or other subjects of this investigation.

In general, Section 3103a. permits the Court to authorize the investigators to seize certain items while executing a delayed notice search warrant where the court finds reasonable necessity exists for seizing such items. In particular, your affiant respectfully submits in this case that there is reasonable necessity to seize firearms, currency, suspected cocaine and/or

HLMC_ATF_SW_000947

other narcotics, scales, packaging materials, ledgers, receipts from purchases showing expenditures of funds, and lists of phone numbers and names if such items are observed.

Your affiant has been advised by Assistant United States Attorney (AUSA) Guy Till that Fed. R. Crim. P. 41(f)(3) provides that the Magistrate Judge may, at the government's request, delay the requirement for notice if the delay is authorized by statute. AUSA Till has advised your affiant that Title 18 USC Section 3103a (b) and (c) permit the court to authorize a delay in providing notice of the execution of a search warrant upon certain findings described in Title 18 USC Section 2705(a)(2). Your affiant respectfully submits that seizing the items described above, if such contraband and evidentiary items are found on the premises by law enforcement agents, will interrupt the cocaine business cycle and will impede the target from engaging in an ongoing pattern of Title 21 felony violations and related felony firearms violations.

Therefore, based upon your affiant's training and personal experience as well as through consultation with other Special Agents and law enforcement investigators, having been involved in numerous firearms and large scale narcotics investigations, you affiant knows or believes based upon knowledge and experience that:

A.  Substantial drug traffickers often maintain on-hand or have immediate access to large amounts of United States Currency in order to maintain their ongoing narcotics business. Inventories are expensive and sales generate cash flows. For the purpose of illustration: many cocaine traffickers who deal in ounce type quantities, deal in the "street ounce" (which is equal to approximately 25 grams) rather than the full 28.3 grams ("cop ounce") when distributing one (1) ounce of cocaine. A dealer who sells a "street ounce" for $1,000 will be able to get four (4) "street ounces" from 100

grams of cocaine and generate cash flows of approximately $20,000 per one half (1/2) kilogram (500 grams) of cocaine. Controlled substance sales at the ounce level and street level generate large cash proceeds which can be problematic for traffickers due to federal currency transaction reporting requirements. Currency transaction reporting requirements limit the traffickers' ability to avoid notice when depositing funds into financial institutions, making cash purchases, or otherwise converting cash into other monetary instruments. Cash proceeds tend to accumulate;

B. Illegal drug trafficking has similarities to legitimate business activities. In general, a business generates business records. Business expenses generally relate to business purposes. Business activity generates a related paper trail reflecting the business activities. Cocaine and other controlled substance traffickers often maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and/or other papers relating to the expenses for transportation, ordering, possession, sale and distribution of controlled substances. Cocaine and other controlled substance traffickers frequently or commonly "front" (provide cocaine and/or other controlled substances on consignment) cocaine and/or other controlled substances to their clients and sub-distributors. The aforementioned books, receipts, records, notes, ledgers, etc., are frequently maintained where the cocaine and/or other controlled substance traffickers have ready access to them;

C. It is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, their

HLMC_ATF_SW_000949

associates' residences, on their property, in their automobiles, in their businesses or in safe deposit boxes at financial institutions for ready access and to conceal the assets from law enforcement authorities;

D. Illegal drug trafficking is often similar to a "black-market" cottage industry. Persons involved in drug trafficking often conceal in their personal residences, their associates' residences, in their automobiles, on their property, businesses and safe deposit boxes, caches of drugs, large amounts of currency, financial instruments, jewelry, expensive clothing, furniture and other items of value which are the proceeds of drug transactions and evidence of consequential financial transactions related to obtaining, transferring, secreting, or spending of large sums of money made from engaging in narcotics trafficking activities;

E. Narcotics traffickers often keep keys, rental receipts, ownership deeds and certificates and billing information about cocaine and/or other controlled substances, assets from their dealings, and related documents are secreted in their residences, the residence's of their associates, automobiles and safe deposit boxes;

F. Cocaine and/or other controlled substance traffickers commonly maintain photographs of their associates, sometimes of social events which are similar to the "company parties" one would associate with a legitimate business, and keep addresses and/or telephone numbers of their associates, customers, sub-distributors, and sources of supply in the trafficking activity;

HLMC_ATF_SW_000950

G.  The courts have universally recognized that firearms are a tool of the trade for drug
traffickers.  Drug traffickers require the use of firearms in order to protect themselves
and their narcotics, currency, and other property from robbery or "rip-off" by
competitors, customers, etc. These firearms are possessed by drug traffickers on their
person, at their place of business, and most importantly, at their residence where they
require the most protection.

H.  Illegal drug traffickers often use various communication technologies to further their
business activities, including, but not limited to, e-mail and voice communications.
Computer equipment is sometimes utilized in certain narcotics operations, as are
cellular telephones, "Blackberry"-type communication devices, pagers and telephone
answering machines; and

I.  Illegal cocaine traffickers have tools, scales, packaging materials, plastic bags and
"cutting" agents used to prepare quantities of cocaine and/or other controlled
substances for distribution.

28. Based on the above stated facts and observations, I believe that Corey Lamont RILEY,
residing at 2331 Pontiac St., Denver, Colorado, is currently involved in the armed
distribution of narcotics. I further state that currently concealed at the residence; located
at 2331 Pontiac St., Denver, Colorado are records, documents, or other tangible evidence
relating to Corey RILEY's narcotics distribution operation. Therefore, I request that this
court issue a Search Warrant for the property described herein, to search for books,
records, receipts, notes, ledgers and U.S. Currency used to aid in the distribution,

transportation, ordering, or purchasing of narcotics, cellular phones, photographs,

videotapes, written correspondence, drug scales, cutting agents. firearms and other

evidence related to narcotics trafficking by Corey RILEY as described in Attachment B

of this affidavit.  Your affiant knows these items to be tangible evidence of Title 21,

United States Code, Section 841(a)(1) and Title 18, United States Code, Section 924(c).

Assistant United States Attorney Guy Till reviewed this affidavit on July 06, 2011.

Based on the above stated facts and observations, I have reasonable cause to believe that

Corey Lamont RILEY, residing at 2331 Pontiac Street, Denver, Colorado, as described above

and in Attachment "A", is currently involved in the distribution of narcotics, in violation of

21 U.S.C. § 841.   Further, I have cause to believe that RILEY possesses firearms in

furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c).  I have cause to

believe that RILEY possesses his narcotics supply, and the firearms used to further his drug

trafficking, at home located at 2331 Pontiac Street, Denver, Colorado.  I have further cause to

believe that, currently concealed in RILEY's residence, located at 2331 Pontiac Street,

Denver, Colorado, are records. documents, ledgers, U. S. Currency, or other tangible physical

evidence relating to Corey Lamont RILEY's narcotics distribution operation.

Therefore, I respectfully request that this court issue a Search Warrant for the 2331 Pontiac

Street, Denver, Colorado, as described in Attachment "A" including its basement, and

specifically including, but not limited to, the basement closet and any "hide" or concealment

located therein, as well as the garage and any other structures located on the curtilage, in

order to search for illegal narcotics, firearms, books, records, receipts, notes, ledgers and U.S

Currency used to aid in the distribution, transportation, ordering, or purchasing of narcotics,

cellular phones, photographs, video tapes, written correspondences, drug scales, and other

evidence related to narcotics trafficking by Corey Lamont RILEY as described in Attachment

"B" of this affidavit.  Your affiant knows these items to be tangible evidence of violations of

21 U.S.C. § 841(a)(1);  and 18 U.S.C. § 924(c)(1)(A).


_____
Jason T. Cole
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed to me this _____ day of July, 2011


_____
United States Magistrate Judge


**KRISTEN L. MIX**
**U.S. MAGISTRATE JUDGE**
**DISTRICT OF COLORADO**

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Colorado

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.   11-sw-05305-BNB |
| | ) | |
| A single family residence located at | ) | |
| 2331 Pontiac Street, Denver, Colorado | ) | |
| (further described in Attachment A) | ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Colorado _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A attached hereto and hereby incorporated by reference

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B attached hereto and hereby incorporated by reference

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before     _July 21, 2011_
                                                                              *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
                                    **KRISTEN L. MIX**
                                    U.S. MAGISTRATE JUDGE
                                    DISTRICT OF COLORADO

☑ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 and 3103(a) (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☑ for _30_ days *(not to exceed 30)*.
                                                ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:     _7/7/11 @ 11:40 a.m._                    _____
                                                                              *Judge's signature*

City and state:     Denver, Colorado                                KRISTEN L. MIX
                                                                              *Printed name and title*
                                                                              U.S. MAGISTRATE JUDGE
                                                                              DISTRICT OF COLORADO

HLMC_ATF_SW_000927

*AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| Return | | |
|---|---|---|
| Case No.:<br>11-sw-05305-BNB | Date and time warrant executed:<br>7\|14\|2011   1400 | Copy of warrant and inventory left with:<br>N\|A |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

SEE ATTACHED ATF FORM 3400.23
"RECEIPT FOR PROPERTY AND OTHER ITEMS"

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2011 JUL 15  PM 2: 10

GREGORY C. LANGHAM
CLERK

BY _____
DEP. CLK.

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:  7\|14\|2011

_____   4969
Executing officer's signature

SPECIAL AGENT JASON COLE
Printed name and title

KRISTEN L. MIX   7/15/11
KRISTEN L. MIX
U.S. MAGISTRATE JUDGE
DISTRICT OF COLORADO

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Receipt for Property and Other Items**

| Page 1 of 3 | Case/Inspection Number | Case/Inspection Title | Office |
|---|---|---|---|
| | 788010-09-0086 | OP ABSOLUTION ZERO | DENVER I |

Taken from: *(name, title, address, if appropriate)*
COREY L. RILEY
2331 PONTIAC ST, DEN. CO

Recipient: *(name, title, address, if appropriate)*

Location of Transfer or Seizure:
2331 PONTIAC ST., DEN. CO

Basis for Transfer or Seizure of Items:
FEDERAL S/W

| Amount or Quantity | Description of Item(s) |
|---|---|
| Evidence Item #1 | Comcast bill in the name of Corey Riley |
| Evidence Item #2 | One hundred dollar bill from basement office table |
| " Item #3 | Rival Seal a Meal vacuum food Storage System from basement office. |
| " Item #4 | Ledger from basement office. |
| " Item #5 | Foodsaver Freezer gallon bags from basement office. |
| " Item #6 | Suspected cocaine from shelf in basement office closet. |
| " Item #7 | Bottle of Inositol 550 mg powder from basement office closet shelf. |
| " Item #8 | Digital Scale from basement office closet, shelf. |
| " Item #9 | Digital scale from basement office closet, shelf. |
| " Item #10 | Digital Scale from basement office closet shelf. |
| " Item #11 | Digital scale that appears to be a CD player cover from basement office closet shelf. |
| " Item #12 | U-Super-U.38 SPL + P 5 rounds ammunition from basement office closet shelf |
| " Item #13 | Silver spoon from basement office closet shelf. |
| " Item #14 | 5 rounds 380 Auto from basement office closet shelf. |
| " Item #15 | Cal Tech 380 semiautomatic SN: KMB22 with magazine model number P3ATI from basement office closet shelf. |
| " Item #16 | 3 boxes Walgreens brand sandwich bags from basement closet shelf in office. |
| " Item #17 | Ruger SP 101 357 magnum SN: 572-38969 with 5 rounds misc ammunition in a black nylon case from basement office closet |
| " Item #18 | Digital scale Ohaus from basement office closet shelf. Shelf |
| " Item #19 | $2,405.00 in cash. U.S. currency from black lock box in basement office closet shelf. Counted by SA Fritze, SA Amos, and Otto Gallegos. |

I hereby acknowledge receipt of the above item(s) into my custody.

| Received by: *(signature)* | | Date |
|---|---|---|
| 4969 | | 7/14/11 |

| Transferred by: *(signature, if appropriate)* | Date | Witnessed by: *(signature)* | Date |
|---|---|---|---|

GPO U.S. GOVERNMENT PRINTING OFFICE: 2009-349-483/41101

ATF Form 3400. 23
Revised March 2005

HLMC_ATF_ROI_001009

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

### Receipt for Property and Other Items

| Page 2 of 3 | Case/Inspection Number | Case/Inspection Title | Office |
|---|---|---|---|
| | 788010.09.0086 | OP ABSOLUTION ZERO | DENVER I |

**Taken from:** *(name, title, address, if appropriate)*
COREY L. RILEY
2331 PONTIAC ST., DEN. CO

**Recipient** *(name, title, address, if appropriate)*
SIA JASON COLE

**Location of Transfer or Seizure**
2331 PONTIAC ST., DEN. CO

**Basis for Transfer or Seizure of Items:**
FEDERAL S/W

| Amount or Quantity | Description of Item(s) |
|---|---|
| Evidence Item #20 | Car title and registration in the name of Corey Riley found in basement office closet second shelf. |
| " Item #21 | $1,500.00 in U.S. currency from basement office closet second shelf. Counted by SA Feltz and TFO Gallegos. |
| " Item #22 | RADOM VIS Model 35 (semi-automatic handgun unknown caliber SN: N9L048 silver in color the grips with magazine found in basement office closet second shelf. top |
| " Item #23 | Green box, 50 rounds, assorted ammunition found in basement office closet top shelf. |
| " Item #24 | Wooden box containing miscellaneous ammunition and single firearm magazine found basement closet in office top shelf |
| " Item #25 | $1,000.00 in U.S. currency from wooden box found in basement office closet top shelf. Counted by SA Feltz and TFO Gallegos. |
| " Item #26 | Winchester Model 70-30-06 SPRG SN: 171340 30-06 caliber rifle with scope found in basement office closet floor. |
| " Item #27 | Smith and Wesson model 469 semiautomatic handgun SN: TAZ9166 with magazine and 12 rounds of Winchester 9 mm Luger ammunition found on basement office closet floor on top of duffel bag. |
| " Item #28 | M11 9 mm with SN: 89-0006364 pistol; barrel extension for M11; magazine for M11 loaded with 12 round of 9 mm ammunition; 20 rounds of 5.56 mm ammunition; all inside a black plastic case from basement office closet floor. |
| " Item #29 | Black First Chance Armor ballistic vest found basement office closet floor. |
| " Item #30 | Brown case with Smith & Wesson model 69-5 SN: AE27483 with 4 rounds of FC 44 REM MAG ammunition and assorted boxes of ammunition from basement office closet floor. |
| " Item #31 | Suspected bundle of powder cocaine from basement office closet second shelf. |

I hereby acknowledge receipt of the above item(s) into my custody.

| Received by: *(signature)* | | | Date |
|---|---|---|---|
| 4969 | | | 7/14/11 |

| Transferred by: *(signature, if appropriate)* | Date | Witnessed by: *(signature)* | Date |
|---|---|---|---|
| | | | |

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

## Receipt for Property and Other Items

| Page 3 of 3 | Case/Inspection Number 188010.09.0036 | Case/Inspection Title OP ABSOLUTION ZERO | Office DENVER I |
|---|---|---|---|

Taken from: (name, title, address, if appropriate)
COREY L. RILEY
2331 PONTIAC ST. DENVER, CO

Recipient: (name, title, address, if appropriate)

Location of Transfer or Seizure
2331 PONTIAC ST., DEN. CO

Basis for Transfer or Seizure of Items:
FEDERAL S/W

| Amount or Quantity | Description of Item(s) |
|---|---|
| Evidence Item # 32 | 7 Crown Royal bags from basement office chair. |
| " Item # 33 | Taurus .38 caliber revolver with 6 rounds ammunition from between box spring and mattress in basement bedroom number one. |
| " Item # 34 | Suspected marijuana from dresser in basement bedroom number one. |
| " Item # 35 | $80.00 in US currency on dresser, behind television, in basement bedroom number one. Counted by TFO Gallegos and SA Fritz. |
| " Item # 36 | Crown Royal bag found on sofa in basement area. |
| " Item # 37 | 4 individual evidence bags of suspected marijuana from basement office closet lower shelves. |
| " Item # 38 | Red shoebox with speed loader and 5 rounds of ammunition from garage. |
| " Item # 39 | Ten cloth gun case and 2 boxes of assorted ammunition from rafter of the garage. |
| " Item # 40 | Browning, model unknown, SN: unknown, .22 caliber, rifle, found in garage hanging on north wall. |
| " Item # 41 | $10,980.00 in US currency from safe in basement office. |
| " Item # 42 | 14 $1.00 silver in color coins from safe in basement office. |
| | NOTHING FOLLOWS |

I hereby acknowledge receipt of the above item(s) into my custody.

| Received by: (signature)   4969 | Date 7/14/11 |
|---|---|
| Transferred by: (signature, if appropriate) | Date | Witnessed by: (signature) | Date |

G>O> U.S. GOVERNMENT PRINTING OFFICE: 2009-349-401/41101

ATF Form 3400. 23
Revised March 2005

HLMC_ATF_ROI_001011