1           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
2
Criminal Action No. 12-CR-00010-MSK
3
UNITED STATES OF AMERICA,
4
        Plaintiff,
5
vs.
6
COREY RILEY,
7
        Defendant.
8   _____

9                     **REPORTER'S TRANSCRIPT**
                      CHANGE OF PLEA
10  _____

11          Proceedings before the HONORABLE MARCIA S. KRIEGER,

12  Judge, United States District Court for the District of

13  Colorado, commencing at 2:43 p.m., on the 29th day of November,

14  2012, in Courtroom A901, United States Courthouse, Denver,

15  Colorado.

16                          **APPEARANCES**

17          GUY TILL, Assistant U.S. Attorney, 1225 17th Street,

18  Suite 700, Denver, Colorado, 80202, appearing for the

19  Government.

20          ARIEL ZUSYA BENJAMIN, Attorney at Law, Springer &

21  Steinberg, 1600 Broadway, Denver, Colorado, 80202, appearing

22  for the Defendant.

23

24              THERESE LINDBLOM, Official Reporter
              901 19th Street, Denver, Colorado 80294
25          Proceedings Reported by Mechanical Stenography
              Transcription Produced via Computer

1                    **P R O C E E D I N G S**

2              *THE COURT:*  Court is convened this afternoon in Case

3    No. 12-cr-10.  This is encaptioned the United States of America

4    v. Corey L. Riley.  The matter is set down for a change in

5    plea.

6              Could I have entries of appearance, please.

7              *MR. TILL:*  Good afternoon, Your Honor.  Your Honor,

8    I'm Guy Till.  I'm an assistant U.S. attorney representing the

9    Government.  Also present at counsel table is Special Agent

10   Jason Cole, Your Honor.

11             *THE COURT:*  Good afternoon and welcome.

12             *MR. TILL:*  Thank you, Your Honor.

13             *MR. BENJAMIN:*  Good afternoon, Your Honor, Ariel

14   Benjamin appearing at counsel table.  With me is defendant,

15   Corey Riley, who is in custody.

16             *THE COURT:*  Good afternoon and welcome.

17             Are you all ready to proceed?

18             *MR. TILL:*  Yes, Your Honor, we are.

19             *MR. BENJAMIN:*  Yes, Your Honor.

20             *THE COURT:*  Thank you.

21             Mr. Benjamin, would you and your client please go to

22   the lectern.

23             This matter is before the Court for a change in the

24   defendant's plea, for rearraignment pursuant to Rule 10, and

25   for consideration of and advisement with regard to the parties'

1   plea agreement in accordance with Rule 11, both of the Federal

2   Rules of Criminal Procedure.

3          The record reflects that the defendant has been

4   charged in a series of Indictments.  He has -- was first

5   charged in an Indictment filed with this court on January 1 --

6   I'm sorry, January 9, 2012.  He was charged in Counts 9, 10,

7   31, and 32 -- I'm sorry.  That was Calvin Riley.  Corey Riley

8   was charged in Counts 11, 12 through 24, 25, 26, 27, 31, and

9   32.  There were two subsequent indictments filed, and the

10  counts differed slightly in those documents, differences which

11  are not important for purposes of today's hearing.  He entered

12  a plea of not guilty to all of the charges and all of the

13  indictments.  And he's now before the Court for consideration

14  of a change in his plea.  I understand that he now desires to

15  enter a plea of guilty to Count 23 of the original Indictment,

16  which charged him -- yes.

17          MR. TILL:  Your Honor, I'm sorry.  I think, actually,

18  unless I'm mistaken, it's Count 23 of the Second Superseding

19  Indictment.

20          THE COURT:  Well, you've -- okay.  You didn't identify

21  it that way in the plea agreement, but I'll deal with it that

22  way.

23          MR. TILL:  I'm sorry.

24          THE COURT:  Count 23 of the Second Superseding

25  Indictment, which charges him with violation of 21 U.S.C.

1    Section 841(a)(1) and (b)(1)(C) and a count in a new

2    Information that charges violation of 18 U.S.C. Section

3    922(g)(3).  Is that correct?

4         *MR. TILL:*  Yes, Your Honor, that's correct.  He's also

5    admitting a forfeiture allegation as to him.

6         *THE COURT:*  Thank you.

7         *MR. BENJAMIN:*  And that is our understanding of this

8    agreement as well.

9         *THE COURT:*  Thank you.  I understand there is one

10   other component to this agreement, and that is that the

11   Government agrees to dismiss all of the remaining counts

12   against Mr. Riley; is that correct?

13        *MR. TILL:*  Yes, Your Honor, it is.

14        *THE COURT:*  All right.  Would you please rearraign on

15   the two counts that he's going to enter a plea of guilty to.

16        *MR. TILL:*  Yes, Your Honor.

17        Sir, is your name Corey L. Riley?

18        *THE DEFENDANT:*  Yes, it is.

19        *MR. TILL:*  Sir, in the Information, Count 1 of the

20   Information that we're filing today, alleges that on or about

21   July 14, 2011, within the district of Colorado, defendant Corey

22   L. Riley knowingly possessed a firearm, a Taurus revolver, No.

23   AP37758 -- and, actually, I have a photo of that if you wanted

24   to look at it to verify the number -- which had moved in

25   interstate commerce, then being an unlawful user of marijuana,

1    a Schedule I controlled substance, all in violation of 18

2    U.S.C. Section 922(g)(3) and 924(a)(2), prohibited person in

3    possession of a firearm.

4            Sir, do you understand that charge and that

5    Information?

6            THE DEFENDANT:  Yes, I do.

7            MR. TILL:  Do you consent to filing that Information

8    today?

9            THE DEFENDANT:  Yes.

10           MR. TILL:  Sir, at this point, how do you plead to

11   Count 1 in the Information, do you plead not guilty or do you

12   plead guilty?

13           THE DEFENDANT:  Guilty.

14           MR. TILL:  Thanks.

15           Sir, in Count 23 of the Second Superseding Indictment,

16   which is Document 469, filed on or about June 5, 2012, the

17   Government and the grand jury basically alleged that on or

18   about July 14, 2011, within the state and district of Colorado,

19   the defendant Corey L. Riley knowingly possessed with intent to

20   distribute a quantity of a substance and mixture containing a

21   detectable amount of cocaine, a Schedule II controlled

22   substance, all in violation of Title 21 United States Code

23   Section 841(a)(1) and (b)(1)(C).

24           Sir, are you the same Corey L. Riley named in Count

25   23?

1          *THE DEFENDANT:*  Yes.

2          *MR. TILL:*  Do you understand that count?

3          *THE DEFENDANT:*  Yes.

4          *MR. TILL:*  Any questions about it, sir?

5          *THE DEFENDANT:*  No.

6          *MR. TILL:*  Sir, today, how do you plead to Count 23,

7    do you plead not guilty or do you plead guilty.

8          *THE DEFENDANT:*  Guilty.

9          *MR. TILL:*  Thank you, sir.

10          Sir, with regard to the forfeiture allegations in this

11   case, as to you, the main thing is that approximately $16,900

12   and a number of firearms were recovered from your residence on

13   or about July 14, 2011.  Do you understand, sir, that by

14   admitting the forfeiture allegation, eventually, your right and

15   claim to that will all be eliminated, you'll give that up?

16          *THE DEFENDANT:*  Yes.

17          *MR. TILL:*  Thank you, sir.

18          *THE COURT:*  Thank you.

19          As of this moment, Mr. Riley, you're not bound by your

20   plea of guilty.  Indeed, you're not bound by this plea until I

21   accept it.  You can change your mind at any time during this

22   hearing up until the time that I accept it.  In order to accept

23   your pleas of guilty, I have to be sure that you understand the

24   charges that have been brought against you, you understand your

25   choices and the consequences flowing from those choices, I have

1    to be sure that your decision to plead guilty is voluntary and

2    you haven't been pressured into that decision, and I ultimately

3    have to find that there is a factual basis to support the plea.

4         In addition, because one of the charges that is

5    brought against you is a charge that is brought in an

6    Information, I have to be sure that you understand your right

7    to be indicted and you are knowingly and voluntarily waiving

8    that right.

9         Finally, there are other rights in -- that are

10   referenced in this plea agreement.  They concern your right to

11   appeal from the sentence imposed and your right to initiate a

12   collateral attack against the conviction and the appeal.  I

13   have to be sure that you understand those rights and you

14   understand the waiver that you're entering into.

15        Throughout this hearing, I want you to let me know if

16   there is anything you don't understand or if you have any

17   questions.  If you'd like to confer with Mr. Benjamin at any

18   time, let me know, and we'll take a brief recess so you can

19   confer privately.

20        I begin by asking you a number of questions.  The

21   questions are not intended to trap, embarrass, insult, or

22   offend you.  The questions are important because your answers

23   are important.  It is your answers that I assess in order to

24   determine whether I can accept your pleas or not.  Therefore,

25   you must answer my questions truthfully and completely.

1   Indeed, like a witness, you take a solemn oath promising to

2   tell the truth.  And if you don't, your answers can be used

3   against you if an action is brought against you for false

4   statement or perjury.  Do you understand?

5          THE DEFENDANT:  I do.

6          THE COURT:  Sir, would you speak into the microphone

7   and loudly, please.

8          THE DEFENDANT:  I'm sorry.  I do.

9          THE COURT:  Do you want to proceed?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Would you please administer the oath.

12          (Defendant sworn.)

13          THE COURT:  Mr. Riley, how old are you?

14          THE DEFENDANT:  43.

15          THE COURT:  What level of school did you complete?

16          THE DEFENDANT:  Twelfth grade.  I fell short by

17   credits, I think it's three or so, something like that.  I'm

18   not exact, but it's somewhere around there.

19          THE COURT:  Do you have any difficulty reading or

20   writing?

21          THE DEFENDANT:  No.

22          THE COURT:  Within the last 24 hours, have you taken

23   any medication?

24          THE DEFENDANT:  No.

25          THE COURT:  Within the last 24 hours, have you used

1    any drug or alcohol?

2            THE DEFENDANT:  No.

3            THE COURT:  To the best of your knowledge, have you

4    ever been diagnosed or treated for any form of mental illness?

5            THE DEFENDANT:  No.

6            THE COURT:  Is there anything about the way you feel

7    today, physically or emotionally, that prevents you from

8    understanding what is happening?

9            THE DEFENDANT:  No.

10           THE COURT:  Have you read and do you understand the

11   charges against you in the first Indictment?

12           THE DEFENDANT:  I do.

13           THE COURT:  And in the Superseding Indictments?

14           THE DEFENDANT:  I do also.

15           THE COURT:  And in the Information?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Have you discussed all of these charges

18   with your attorney?

19           THE DEFENDANT:  I have.

20           THE COURT:  Have you asked him all the questions you

21   have about them?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Has he answered all of your questions?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Are there any other questions you want to

1   ask him about the charges?

2            THE DEFENDANT:  No.

3            THE COURT:  Mr. Benjamin, is there an Information that

4   has been marked as an exhibit?

5            MR. BENJAMIN:  Yes, Your Honor.  Marked as Exhibit 3.

6            THE COURT:  Thank you.

7            Mr. Riley, would you please turn to that document.

8   Have you read it?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Have you discussed it with Mr. Benjamin?

11           THE DEFENDANT:  Yes, I have.

12           THE COURT:  This -- have you -- in the discussion with

13  Mr. Benjamin, have you discussed your right to be indicted and

14  how it differs from a charge brought by an Information?

15           THE DEFENDANT:  Yes.

16           THE COURT:  What do you understand the difference to

17  be?

18           THE DEFENDANT:  Let me remember here.  Just a lot we

19  went over, I'm sorry.

20           THE COURT:  That's all right.  We'll cover it right

21  now.  An Indictment is a right -- you have a right to be

22  indicted under the United States Constitution.  An Indictment

23  is rendered by a grand jury.  A grand jury is composed of at

24  least 16 and not more than 23 people.

25           And for an Indictment to bring charges against you, at

1    least 12 people have to agree there is probable cause to bring

2    those charges.  The distinction with an Information is, it's

3    not brought by the grand jury.  It's signed only by Mr. Till as

4    an assistant U.S. attorney.  And therefore, it is only he on

5    behalf of the United States Attorney who is bringing the

6    charge.  Since you have a constitutional right to have a grand

7    jury consider whether charges are brought, in order to proceed

8    on an Information, you have to give up your right to be

9    indicted.  You have to waive that right.  Have you discussed

10   that with Mr. Benjamin?

11          THE DEFENDANT:  Yes, I have.

12          THE COURT:  And do you want to waive your right to be

13   indicted and proceed on this Information, which has been marked

14   as Exhibit 3?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Have any threats or promises been made to

17   induce you to waive your right to be indicted?

18          THE DEFENDANT:  No.

19          THE COURT:  Do you have any questions about that

20   right?

21          THE DEFENDANT:  No, I don't.

22          THE COURT:  Mr. Benjamin, have you discussed with your

23   client his constitutional right to be indicted?

24          MR. BENJAMIN:  We have, Your Honor.

25          THE COURT:  Have you -- well, are you satisfied that

1    he understands the nature of that right and that his decision

2    to proceed on this Information and waive that right is knowing

3    and voluntary?

4         *MR. BENJAMIN:*  I am, Your Honor.

5         *THE COURT:*  Thank you.  Is the plea agreement marked

6    as an exhibit?

7         *MR. BENJAMIN:*  It is, Your Honor.  It's marked as

8    Court's Exhibit 1.

9         *THE COURT:*  Thank you.

10        Mr. Riley, would you turn to Court Exhibit 1, please.

11        *THE DEFENDANT:*  Yes, Your Honor.

12        *THE COURT:*  Have you read this document?

13        *THE DEFENDANT:*  Yes, I have, Your Honor.

14        *THE COURT:*  Have you discussed it with Mr. Benjamin?

15        *THE DEFENDANT:*  Yes, I have.

16        *THE COURT:*  Asked him all the questions you had about

17   it?

18        *THE DEFENDANT:*  Yes.

19        *THE COURT:*  Has he answered all of your questions?

20        *THE DEFENDANT:*  Yes, he did.

21        *THE COURT:*  Are there any other questions you want to

22   ask him?

23        *THE DEFENDANT:*  No, I don't.

24        *THE COURT:*  This document has a lot of legal language

25   in it.  Do you understand what it says and what it means?

1          *THE DEFENDANT:*  He explained it to me while we were

2     talking and stuff.

3          *THE COURT:*  I understand he explained it to you; but

4     what I'm asking, do you understand it?

5          *THE DEFENDANT:*  I do understand it, and some terms I

6     don't understand.

7          *THE COURT:*  Well, do you need to confer with him?

8     Because I have to be sure that you understand the entirety of

9     this document before I can accept your plea.

10          *THE DEFENDANT:*  I do understand the entirety, you

11     know, document.  I do understand that.

12          *THE COURT:*  Okay.

13          *THE DEFENDANT:*  I'm sorry, I did say --

14          *THE COURT:*  Is there some part of the document that

15     you don't understand?

16          *THE DEFENDANT:*  No, it's not any of it that I don't

17     understand.

18          *THE COURT:*  Okay.  Does it reflect all of your

19     agreement with the Government?

20          *THE DEFENDANT:*  Yeah.

21          *THE COURT:*  Did you sign it?

22          *THE DEFENDANT:*  Yes, I did.  I believe I did.

23          *THE COURT:*  Please turn to the last page of the

24     document.  Is your signature there?

25          *THE DEFENDANT:*  Yes, it is.

1          THE COURT:  Thank you.

2          Mr. Benjamin, does Exhibit 1 also bear your signature?

3          MR. BENJAMIN:  It does, Your Honor.

4          THE COURT:  And I know you reviewed this with

5   Mr. Riley and you answered his questions.  Are you satisfied

6   that he understands the contents of Exhibit 1?

7          MR. BENJAMIN:  I am, Your Honor.

8          THE COURT:  Did you review the discovery in this case?

9          MR. BENJAMIN:  I did.

10         THE COURT:  Does it comport with the facts recited in

11  Exhibit 1?

12         MR. BENJAMIN:  It does.

13         THE COURT:  Thank you.

14         Mr. Riley, I'd like you to turn to a particular

15  portion of Exhibit 1.  You'll find it on page 3, begins at

16  paragraph D.  You'll see there that you are giving up your

17  right to appeal from the sentence that is imposed in this case.

18         THE DEFENDANT:  Yes.

19         THE COURT:  You have -- are giving up that right, and

20  you'll only be able to appeal from the sentence or from the

21  prosecution, and you will not be able to appeal from the

22  conviction at all.  But the others you can appeal from only

23  under three circumstances:  Where the sentence is above the

24  statutory maximum, or where the sentence is above the

25  applicable sentencing guideline range, or where the adjusted

1    offense level that is computed under the federal sentencing

2    guidelines is greater than 25 and a sentence is imposed on that

3    basis.  Do you understand that?

4           THE DEFENDANT:  Yes, I do.

5           THE COURT:  Okay.  The paragraph goes on to explain

6    that you are giving up your right to bring a collateral attack

7    against the prosecution, the conviction, and the sentence, and

8    you can only do that under some very limited circumstances.  If

9    there is an explicitly retroactive change in the applicable

10   guidelines or sentencing statute, if there is a claim that you

11   were denied effective assistance of counsel, or if there is a

12   claim of prosecutorial misconduct.  Do you understand that?

13          THE DEFENDANT:  I do.

14          THE COURT:  Now, there is one caveat to all of these

15   waivers.  It's in the last sentence of this paragraph.  If the

16   Government appeals from the sentence imposed, you are released

17   from all of your waivers here.  Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Mr. Till, does Exhibit 1 bear your

20   signature?

21          MR. TILL:  It does, Your Honor.

22          THE COURT:  Thank you.

23          Mr. Riley, in Exhibit 1, there is a statement of what

24   the Government believes it could prove if this matter were to

25   go to trial.  By entering into this agreement, you are

1    admitting that these facts are true.

2           THE DEFENDANT:  Yes.

3           THE COURT:  I'll treat them as true, both for purposes

4    of considering your plea and also for purposes of sentencing.

5    Therefore, I'm going to ask Mr. Till to recite the facts you

6    have agreed to.  Listen closely to what he says, because when

7    he finishes, I'm going to ask you if those facts are true.

8           THE DEFENDANT:  Okay.

9           THE COURT:  If you have any disagreement with the

10   facts as recited by Mr. Till, you must tell me.  Do you

11   understand?

12          THE DEFENDANT:  I do.

13          THE COURT:  Thank you.

14          Mr. Till, would you recite the facts upon which the

15   parties agree.

16          MR. TILL:  Yes, Your Honor.

17          Your Honor, what we have agreed is that the date upon

18   which the relevant offense conduct began is approximately April

19   of 2011.  Your Honor, the Alcohol, Tobacco and Firearms

20   investigators developed a confidential human source, witness,

21   who made controlled purchases of cocaine from Mr. Corey Riley

22   at Mr. Corey Riley's home and residence at 2331 Pontiac Street

23   in the city and county of Denver, in the state and district of

24   Colorado.  The controlled purchases were electronically

25   recorded.  The cocaine drug exhibits required and the

1   controlled purchase was sent to forensic laboratory, were it

2   was analyzed and determined to contain a detectable amount of

3   cocaine.

4           We have a list on page 8 of 12 controlled purchases.

5   The first one is in April of 2010, and it continues through

6   June of 2011.

7           THE COURT:  Would you please recite these for the

8   record.

9           MR. TILL:  Beg your pardon?

10          THE COURT:  Would you please recite these dates and

11  amounts for the record.

12          MR. TILL:  I will, Your Honor.  I just wanted to

13  digress for just a second and indicate that I did misspeak when

14  I said the investigation began on or about April of 2011.

15  Obviously, it began on or about April of 2010.

16          THE COURT:  So do you care to amend the provision that

17  is found about midway through page 7?

18          MR. TILL:  Yes, Your Honor.  If I could take a moment,

19  I would like to change that.

20          THE COURT:  All right.

21          MR. TILL:  Your Honor, for the record, what we're

22  doing is crossing out 2011 on page 7 towards the middle of the

23  page and inserting 2010 instead.  We're initialing it.

24          THE COURT:  Thank you.

25          MR. TILL:  Your Honor, on April 7, 2010, 26.3 grams of

1    cocaine mixture and substance for purchase were analyzed by the

2    lab and determined to be cocaine mixture and substance.  On or

3    about May 6, 2010, there was another purchase of 26.3 grams of

4    cocaine mixture and substance --

5            THE COURT:  Counsel, excuse me.  Are these the dates

6    that they were seized, or were these the dates they were

7    tested?

8            MR. TILL:  These are the dates they were acquired.

9            THE COURT:  Okay, thank you.

10            MR. TILL:  And so approximately -- an ounce is

11    approximately 26 grams, so these apparently are ounce type

12    purchases.  On -- on May 26, 2010, there was a 24.8-gram

13    purchase of cocaine mixture and substance.  On July 14,

14    apparently they're trying to move up a little bit and buying

15    something more in the area of 2 ounces, Your Honor.  On

16    July 14, 2010, they acquired approximately 55.4 grams of

17    cocaine mixture and substance from Mr. Corey Riley.  On

18    March -- there is an interval of time they were not active,

19    apparently.  On March 31, 2011, there was a purchase of

20    13.5 grams of mixture and substance, determined to contain

21    cocaine.  On April 8, 2011, there was 13.5 grams, again,

22    approximately a half ounce, Your Honor, purchase of cocaine

23    mixture and substance.  On April 13, there was another purchase

24    of 13.6 grams of cocaine mixture and substance.  On May 12,

25    2011, there was another 13.7-gram purchase of cocaine mixture

1    and substance.   On May 20, there was -- of 2011, there was a

2    27.4-gram purchase of cocaine mixture and substance, again,

3    trying to move up, getting larger -- more like an ounce

4    quantity.

5         On June 3, 2011, there was a multi-ounce purchase of

6    127 grams of cocaine mixture and substance.   On June 3, 2011,

7    there was a 7.1-gram of cocaine mixture and substance purchase.

8    And on June 30, 2011, there was 59.0 approximately purchase of

9    cocaine mixture and substance, again, going into the 2-ounce

10   range, Your Honor.

11        Following up after the June 30, 2011 purchase, Bureau

12   of Alcohol, Tobacco and Firearms special agents prepared a

13   search warrant application, presented the search warrant

14   application, and were granted a search warrant to search the

15   residence, Your Honor.   They executed that search warrant on

16   July 14, 2011.   In that search warrant, Your Honor, they found

17   approximately 344 grams of what was determined to be a cocaine

18   mixture and substance.   So that's the major part of -- that's a

19   very large seizure in the course of this investigation.

20        They also recovered a number of firearms when they did

21   that search warrant, Your Honor, from the residence.   One of

22   the firearms recovered, which is the subject of the

23   Information, is a Taurus revolver, No. AP, alpha papa, 37758,

24   which is made in Brazil and had moved in interstate commerce to

25   be found in Colorado as of July 14, 2011.

1          As of July 2011, Corey Riley was a frequent user of

2    marijuana, Your Honor.  And as a user of marijuana, he would be

3    a prohibited person with respect to possession of a firearm.

4    Several of the firearms were in loaded condition.  One of the

5    firearms was found within several feet of cocaine package for

6    distribution, a scale, a large amount of currency, and

7    packaging material.  All of the firearms recovered functioned

8    as designed.

9          The cocaine seized on the 14th was sent to a forensic

10   laboratory and determined to be, in fact, a substance and

11   mixture containing a detectable amount of cocaine with a net

12   weight of 344.9 grams.

13         Adding all of the different quantities together, Your

14   Honor, the total is approximately 730 grams of a cocaine

15   mixture and substance that was either purchased from or seized

16   from the residence at the defendant -- at the residence at 2331

17   Pontiac Street.

18         That's basically the facts.

19         THE COURT:  Thank you.

20         Mr. Riley, are these facts true?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Then let's talk about penalty.

23         For the charge in the Information, the maximum

24   statutory penalty is 10 years of imprisonment, a fine of up to

25   $250,000, both can be imposed, the term of imprisonment can be

1    followed by up to 3 years of supervised release, there is a

2    $100 special assessment fee.

3         With regard to the charge in the Indictment, the

4    maximum penalty is 20 years of imprisonment, a $1 million fine

5    can be imposed, both can be imposed, and this term of

6    imprisonment can be followed by up to 3 years of supervised

7    release, there is also $100 special assessment fee for that

8    Count.  These are separate counts for separate convictions.

9    They may result in separate sentences, and you may be ordered

10   to serve these sentences either concurrently or consecutively

11   one after the other.

12        The supervised release term for these two convictions

13   runs concurrently, so it will be no longer than a 3-year

14   supervised release.  The supervised release term will come with

15   certain provisions that I'll talk about in a minute.

16        For the imprisonment term, you should understand that

17   in the federal system we measure imprisonment terms in months,

18   not years.  There is no parole.  There is no automatic

19   reduction.  Every month you're sentenced to serve, you'll

20   serve.

21        Now, there are a limited number of ways to reduce the

22   sentence.  Some of those, you have given up by the terms of

23   this plea agreement.  The first is by a successful motion

24   brought shortly after judgment is entered.  The second is

25   through a successful appeal and resentencing.  But, remember,

1    you can only appeal under very limited circumstances.  The

2    third is through a successful collateral attack.  But,

3    remember, again, you can only bring a collateral attack under

4    very limited circumstances.

5          And the fourth is in the discretion of the Bureau of

6    Prisons.  They have discretion to give you up to 54 days per

7    year good time credit against your sentence.  They're not

8    obligated to.  They make that decision based on whether they're

9    satisfied that you complied with their rules and regulations.

10         Now, as I said, after a prison term, there can be a

11   term of supervised release imposed here.  Three years is the

12   maximum.  And during that time period, you're required to abide

13   by a number of conditions.  There are a set of conditions that

14   are standard conditions, and then there can be special

15   conditions as well.  Standard conditions apply, as you might

16   guess, to all cases.  That's what makes them standard.  There

17   are lots of them.  And I'm only going to bring three to your

18   attention, but you should understand, there are many more.

19         You cannot commit any new crimes, state, federal, or

20   local; you cannot use, sell, or possess any illegal substances;

21   and you cannot use, sell, or possess any prohibited firearms or

22   destructive devices.

23         Now, with regard to special conditions, these are

24   unique to you and to your particular circumstances.  Based on

25   the facts that have been included in the plea agreement, I can

1    guess a little bit as to what kinds of special conditions might

2    be imposed, but I'm not absolutely sure.  I'll give you some

3    examples.  Likely, you'll have to go through periodic drug

4    checks, likely you will have to participate in a substance

5    abuse rehabilitation program, and you may have to pay for it.

6    If you have an issue with alcohol, you may have to participate

7    in an alcohol rehab program, and you may have to pay for it.

8    If you have or you develop mental health issues, you may have

9    to participate in mandatory mental health treatment.  And there

10   may be other programs that are appropriate for you.

11           Now, the important thing to know about these

12   conditions is, they're mandatory.  They're not optional.  It's

13   not sufficient to comply with some and not others.  It's not

14   sufficient simply to try, because if you do not comply with all

15   the conditions all the time, the Government can bring you back

16   here to this courtroom and ask me to revoke your supervised

17   release.  And if I revoke your supervised release, I can send

18   you back to prison for another term.

19           The penalty that will be imposed here is not just a

20   function of the statutes of conviction, however.  In deciding

21   what penalty is appropriate, there is some other statutes that

22   come auto into play.  And most prominent is 18 U.S.C. Section

23   3553, which is a statute that applies in the context of all

24   sentences in the federal system.  It requires me to impose a

25   sentence that is sufficient but not greater than necessary to

1    accomplish particular objectives:  To promote respect for the

2    law; to provide just punishment; adequately deter criminal

3    conduct; protect the public from further crimes by you; and

4    provide you with needed educational or vocational training,

5    medical care, or other correctional treatment in the most

6    effective manner.

7         In order to fashion a sentence that meets these

8    objectives, the statute tells me what factors I can consider:

9    The nature and circumstances of the offense; your history and

10   characteristics; the kinds of sentences that are available;

11   what the federal sentencing guidelines would require; the need

12   to avoid unwarranted sentence disparities among defendants with

13   similar records found guilty of similar conduct; and in the

14   appropriate case, the need for restitution.

15        I know that your attorney and the Government's

16   attorney have calculated the sentencing range that they believe

17   will apply under the federal sentencing guidelines.  In fact,

18   you'll find those calculations beginning on page 9 of Exhibit

19   1.  There are several things that you need to know about these

20   calculations.  First of all, they're not binding on the Court.

21   There is no guaranteed sentence here.

22        Secondly, these are an estimate, an estimate made by

23   the attorneys based on the information they had at the time you

24   entered into this agreement.  But at the time of sentencing,

25   we're not going to be working from this document, and we may

1    not be working from these calculations.  That's because the

2    document we'll be working from is called the presentence

3    investigation report.  It's a document prepared by the

4    probation office of the Court.  And it, too, has a computation

5    under the federal sentencing guidelines.  Sometimes that

6    computation differs from the computation in the plea agreement.

7    And we'll be working off of the one on the presentence

8    investigation report, not the plea agreement.

9         Prior to your sentencing, you and your attorney will

10   meet with the probation officer.  You will have an opportunity

11   to review the report that's prepared by the probation officer.

12   And if you have any problem with the contents of the report or

13   the calculation under the guidelines, your attorney will have

14   an opportunity to advise the probation officer.  And if there

15   is no satisfactory resolution to the issue, you'll be able to

16   address it at the time of sentencing.

17        The third thing to remember is that the calculation

18   under the guidelines is only one factor that I consider in

19   determining your sentence.  It's an important factor, but it's

20   not the only factor.  It's a starting point, but it's not

21   necessarily the ending point.  And that's because I'm required

22   to impose a sentence that meets those sentencing objectives

23   that I mentioned a few minutes ago.  And if the calculation

24   under the guidelines doesn't do that, then I can impose a

25   non-guideline sentence.  Now, sometimes people call that a

1    variant sentence, sometimes they call it a statutory sentence,

2    but it all means the same thing.  It's a sentence outside the

3    guideline range.  And it can be higher than the guideline

4    range, or it can be lower than the guideline range, whatever is

5    necessary in order to meet the sentencing objectives.

6          Your sentencing hearing will occur a number of weeks

7    from now.  And as I said, you and your attorney will meet with

8    the probation officer before the sentencing hearing, and you'll

9    have -- and before the report is prepared, and you'll have an

10   opportunity to look at the report once it is prepared.  Don't

11   be confused by the title "probation officer."  It's simply the

12   title of the person preparing the report, but it has nothing to

13   do with the penalty to be imposed.

14         At the sentencing hearing, your attorney and the

15   Government's attorney will have an opportunity to make an

16   argument as to what sentence should be imposed.  You will have

17   an opportunity to make a statement, but no one else may make a

18   statement on your behalf.  Now, if there are folks who would

19   like to say something about you, they may do so in the form of

20   a letter that is sent to the probation officer -- not to me,

21   but sent to the probation officer.  It will be included with

22   the presentence investigation report.

23         Do you understand the objectives and factors I'll be

24   evaluating in determining your sentence?

25              *THE DEFENDANT:*  I do.

1          *THE COURT:*  Do you understand the maximum sentence

2    that can be imposed?

3          *THE DEFENDANT:*  I do.

4          *THE COURT:*  Do you understand that the charges you're

5    pleading guilty to are felony charges?

6          *THE DEFENDANT:*  Yes, I do.

7          *THE COURT:*  Do you understand that these may affect

8    your civil rights, including your right to vote, hold public

9    office, serve on a jury, possess a firearm, or obtain any

10   number of licenses?

11         *THE DEFENDANT:*  Yes, I do.

12         *THE COURT:*  Do you understand that the sentence I

13   impose may be more severe than what has been calculated in

14   Exhibit 1?

15         *THE DEFENDANT:*  Yes.

16         *THE COURT:*  And do you understand if I accept your

17   pleas of guilty today, no matter what the sentence is, you

18   won't be able to withdraw your pleas at the time of sentencing?

19         *THE DEFENDANT:*  Yes.

20         *THE COURT:*  Any questions about sentencing?

21         *THE DEFENDANT:*  No.  I understand.

22         *THE COURT:*  Mr. Benjamin, could you identify the

23   statement in advance, please.

24         *MR. BENJAMIN:*  Yes, Your Honor.  It's here at the

25   podium marked as Court's Exhibit 2.

1          THE COURT:  Thank you.

2          Mr. Riley, would you please turn to Court Exhibit 2.

3  Have you read this document?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Have you discussed it with Mr. Benjamin?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Asked him all the questions you had about

8  it?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Has he answered all of your questions?

11          THE DEFENDANT:  Yes, he did.

12          THE COURT:  Did you have any other questions about the

13  contents?

14          THE DEFENDANT:  No.

15          THE COURT:  Have you signed the document?

16          THE DEFENDANT:  I did.

17          THE COURT:  Would you look at the last page and tell

18  me whether your signature is there.

19          THE DEFENDANT:  Yes, I did.

20          THE COURT:  Let's go over the contents of this

21  particular document relative to the rights that you are

22  waiving.  You don't need to follow along, because I think I can

23  summarize it a little bit faster than you can find it in the

24  document.

25          You're giving up a number of constitutional rights

1    today by making your pleas of guilty.  And first and foremost,

2    you're giving up your right to a jury trial.  The Constitution

3    guarantees you that when charges like this are brought against

4    you, you can have a jury determine them in a jury trial.  And

5    the trial would take place in this courtroom, and the jury

6    would sit in the jury box.  Twelve people would serve on that

7    jury, and you and your attorney and the Government's attorney

8    would participate in the selection of the potential jurors.

9    You could exclude any potential juror who is unable to be fair

10   and impartial or who is unable or unwilling to follow the law.

11   In addition, you can exclude a number of jurors without giving

12   any reason whatsoever.  This is true for the Government as

13   well.

14        Once the jurors are selected, they take a solemn oath

15   promising to consider only the evidence presented here in the

16   courtroom and to follow the instructions I give them as to the

17   law.  One of the instructions I give them tells them that they

18   must reach a unanimous agreement that the Government has proven

19   every element of a charge beyond a reasonable doubt in order to

20   find you guilty of that charge.  If any one of those jurors has

21   a reasonable doubt, you can't be convicted.

22        Now, during the trial process, you have other

23   constitutional rights.  For example, you have the right to

24   remain silent.  That means that nobody can ask you any

25   questions, and you can't be compelled to answer any questions.

1      It means that the jury can't consider your silence in

2      determining whether the Government has proven the charge or

3      charges against you.  Now, your silence doesn't hamper your

4      attorney.  Your attorney can still cross-examine or examine any

5      witness, oppose the admission of exhibits and other evidence,

6      and the -- your attorney can make arguments to the jury or to

7      me.

8              Now, because your right to remain silent is a right,

9      you can waive it if you change your mind.  You can decide

10     either before the trial or during the trial that you want to

11     testify.  And you can put on evidence, call other witnesses to

12     testify if you want.  In fact, if there are other people you

13     want to have testify and they're reluctant to come forward, I

14     would compel them to come forward and testify.

15             Now, you have yet another constitutional right in the

16     trial process, and that's the right to be represented by an

17     attorney.  And where you cannot afford an attorney, to have an

18     attorney represent you without any cost to you.

19             I know that Mr. Benjamin has represented you thus far

20     in this case and advised you with regard to this plea agreement

21     and the statement in advance.  But I can assure you that if you

22     would prefer to go to trial, he would represent you ably and

23     well at trial.  And if there came a point where you could no

24     longer afford his services, you would be entitled to have an

25     attorney appointed to represent you without any charge to you.

1          Now, if you went to trial and you were convicted, you

2    could appeal both from the conviction and from the sentence.

3    But today, by entering pleas of guilty, you're not going to be

4    able to appeal from the convictions.  And for the most part,

5    you're not going to be able to appeal from the sentences.

6          Do you understand that you're waiving your right to a

7    jury trial and other constitutional rights associated with it

8    if you proceed with your plea of guilty?

9              THE DEFENDANT:  I do.

10             THE COURT:  Is that what you want to do?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Where are you currently being housed?

13             THE DEFENDANT:  Over on -- at the ICE facility on

14   30th -- 31st and Oakland Street.

15             THE COURT:  Have you been treated all right?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Has anybody pressured you to make this

18   plea today?  And before you respond, let me define "anybody."

19   I really mean anybody.  That includes your family, your

20   friends, neighbors, acquaintances, people you like, you don't

21   like, people who like you or don't like you, it includes

22   everybody at the facility where you're currently being housed,

23   or those folks who transported you here, or anybody here at the

24   courthouse, it includes the attorneys, it includes anybody.

25   Has anybody pressured you to make this plea today?

1              *THE DEFENDANT:*  No.

2              *THE COURT:*  Has anybody promised you something that

3    isn't in the plea agreement?

4              *THE DEFENDANT:*  No.

5              *THE COURT:*  Have you had enough time to review and

6    consider and discuss your plea and plea agreement with

7    Mr. Benjamin?

8              *THE DEFENDANT:*  I have.

9              *THE COURT:*  Are you satisfied with him as your

10   attorney?

11             *THE DEFENDANT:*  I am.

12             *THE COURT:*  Do you have any concerns, complaints, or

13   criticism about the legal representation you've received?

14             *THE DEFENDANT:*  I don't.

15             *THE COURT:*  Do you want to ask him any questions?

16             *THE DEFENDANT:*  No.

17             *THE COURT:*  Do you have any questions for me?

18             *THE DEFENDANT:*  No.

19             *THE COURT:*  Well, then, now is the time to finalize

20   your decision.  This plea agreement you and I have been

21   discussing, Exhibit 1, do you still want to proceed with it?

22             *THE DEFENDANT:*  I do.

23             *THE COURT:*  Do you still want to proceed with your

24   plea of guilty to Count 23 and to the count in the Information?

25             *THE DEFENDANT:*  Yes.

1        *THE COURT:*  Mr. Benjamin, any reason not to accept the

2    plea and plea agreement?

3        *MR. BENJAMIN:*  No, Your Honor.

4        *THE COURT:*  Mr. Till.

5        *MR. TILL:*  No, Your Honor.

6        *THE COURT:*  Mr. Till, this agreement anticipates the

7    Government's dismissal of the remaining charges against

8    Mr. Riley.  Are you prepared to make that motion today?

9        *MR. TILL:*  Yes, Your Honor.  I would like to make an

10   oral motion to dismiss the Indictment as to Mr. Riley, the

11   Superseding Indictment as to Mr. Riley, and the remaining

12   counts of -- with the exception of the forfeiture count and

13   Count 23 of the Second Superseding Indictment as to Mr. Riley.

14       *THE COURT:*  Does the -- do the counts that Mr. Riley

15   has pled guilty to reflect the seriousness of his actual

16   offense behavior?

17       *MR. TILL:*  Yes, Your Honor.

18       *THE COURT:*  And if I were to accept this agreement,

19   would the statutory purposes of sentencing be undermined in any

20   fashion?

21       *MR. TILL:*  No, Your Honor.

22       *THE COURT:*  Thank you.

23       Mr. Benjamin, anything you'd like to add?

24       *MR. BENJAMIN:*  Not at this time, Your Honor.

25       *THE COURT:*  Thank you.

1          Then based upon the record made in open court today in

2     Case No. 12-cr-10, encaptioned for purposes of this hearing as

3     the United States of America v. Corey L. Riley, I hereby find

4     that the defendant is fully competent to enter an informed plea

5     and to waive his various constitutional rights.  He's been

6     represented through the course of this case and this

7     proceeding, and he has no objection, criticism, or complaint as

8     to the representation he has received.  He's aware of the

9     nature of the charges against him and the effects and

10    consequences of his plea of guilty.  He has knowingly and

11    voluntarily waived fundamental constitutional rights, including

12    his right to a jury trial and his right to be indicted.  He

13    understands that the penalty imposed -- to be imposed by the

14    Court will be based in part on the facts stated in the plea

15    agreement, and the penalty may exceed the calculations in the

16    plea agreement.  His plea of guilty is voluntary and knowingly

17    made, and the charge and plea is supported by an independent

18    basis in fact.

19         In accordance with the terms of the plea agreement,

20    the Government has moved to dismiss all of the counts against

21    Mr. Riley in the Indictment and the Superseding Indictment and

22    all of the charges against him in the Second Superseding

23    Indictment, except Count 23 and the forfeiture allegation.

24         The Government has represented to me that the charges

25    to which Mr. Riley has pled guilty accurately reflect the

1    seriousness of the actual offense behavior and that the

2    agreement does not undermine the statutory purposes of

3    sentencing.  It's therefore ordered that the -- that Court

4    Exhibits 1, 2, and 3 are received, the plea as made in open

5    court today is accepted, and the defendant is adjudged guilty

6    as charged in Count 23 in the Second Superseding Indictment and

7    Count 1 in the Information.

8            The remaining counts are dismissed, except for the

9    forfeiture in the Second Superseding Indictment.  And the order

10   dismissing other counts is stayed pending sentencing in this

11   matter.

12           The Probation Department will conduct a presentence

13   investigation, submit a presentence report as required by Rule

14   32, and the defendant with the assistance of counsel will

15   participate in the investigation and cooperate fully with the

16   probation department.

17           It looks like to me that you have set this matter for

18   a sentencing hearing on March 5, 2013 at 11 o'clock a.m.; is

19   that right?

20           *MR. TILL:*  Yes, Your Honor.

21           *MR. BENJAMIN:*  Yes, Your Honor.

22           *THE COURT:*  Still work for you?

23           *MR. TILL:*  Yes, Your Honor.

24           *MR. BENJAMIN:*  Yes, Your Honor.

25           *THE COURT:*  Okay.  Then that will be our sentencing

1    hearing.  Trial on charges against Mr. Riley was vacated at the

2    time of the filing of notice of disposition.

3            With regard to motions, it appears to me there are

4    several outstanding motions.  Docket No. 397, the defense

5    motion for disclosure of the Government's intent to use

6    particular evidence; Docket No. 400, a motion to sever; and

7    Docket No. 564, a motion for leave to restrict access to a

8    document that the United States has filed.  Do you care to

9    withdraw those?

10           MR. TILL:  I'd like to withdraw the Government motion,

11   Your Honor.

12           MR. BENJAMIN:  And we would withdraw our motions as

13   well, Your Honor.

14           THE COURT:  All right.  Thank you.  Is there any

15   further business we need to address today?

16           MR. TILL:  Not from the Government, Your Honor.

17           MR. BENJAMIN:  Not from the defense.  Thank you.

18           THE COURT:  Thank you.

19           Then, Mr. Riley will be remanded to the care and

20   custody of the United States Marshal Service.  That will

21   conclude this hearing.  Thank you to counsel and to the Marshal

22   Service and court staff.  That -- Mr. Riley will be remanded,

23   and we will stand in recess.

24           (Recess at 3:31 p.m.)

25

37

1                         REPORTER'S CERTIFICATE

2

3          I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.

4

5          Dated at Denver, Colorado, this 24th day of August, 2013.

6                                   s/Therese Lindblom

7                         _____

8                         Therese Lindblom,CSR,RMR,CRR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25